UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GENESIS CORPORATE SOLUTIONS, LLC d/b/a YASH TECHNOLOGIES, <br><br> .       Plaintiff, <br><br>     v. <br><br> SAP AMERICA, INC. and BERNIS SHELTON, <br><br>        Defendants. | Civil Action No.: |

## NOTICE OF REMOVAL

TO:   The United States District Court
      For the District of Massachusetts

PLEASE TAKE NOTICE THAT, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446

Defendants SAP America, Inc. ("SAP") and Bernis Shelton ("Shelton") (collectively,

"Defendants"), by their undersigned counsel, Duane Morris LLP, hereby remove to this Court

the above-captioned case, currently pending in the Superior Court Department of the

Massachusetts Trial Court, Business Litigation Session, Suffolk County at No. 15-1734.  In

support of this removal, SAP and Shelton state as follows:

## I.    Procedural History

1.      On or about June 10, 2015, the plaintiff, Genesis Corporate Solutions, LLC, d/b/a

YASH Technologies ("Genesis") filed a Complaint against SAP and Shelton in the Superior

Court Department of the Massachusetts Trial Court, Business Litigation Session, Suffolk County

at No. 15-1734.

2.      The plaintiff's Complaint asserts seven counts:  (I) Breach of Contract; (II)

Breach of the Implied Covenant of Good Faith and Fair Dealing; (III) Violation of Massachusetts

General Laws Ch. 93A, § 11; (IV) Quantum Merit/Unjust Enrichment; (V) Promissory

Estoppel/Detrimental Reliance; (VI) Breach of Fiduciary Duty; and (VII) Tortious Interference

with Advantageous Business Relations.

     3.      SAP provides software solutions for businesses.  The Complaint alleges that

Genesis was an "SAP Partner pursuant to an SAP Partner Edge Channel Reseller Policy

agreement" (the "Agreement").

     4.      The Complaint alleges that SAP and Shelton, an SAP employee, interfered with

SAP's business relationship with an end-user of certain SAP software by reallocating that

business opportunity to SAP and another SAP authorized reseller.  The Complaint alleges that in

so doing, SAP violated the Agreement, and that SAP and Shelton are liable to Genesis under the

legal theories stated above.

     5.      On June 22, 2015, Genesis served SAP with a copy of the the Complaint, and a

Civil Action Cover Sheet.  Copies of those documents, and confirmation of receipt of service

from SAP's agent for service, are attached hereto as **Exhibit A**.  To date, Shelton has not been

served.

**II.**     **Basis for Jurisdiction**

     6.      This Court has original jurisdiction over this action pursuant to 28 U.S.C.

§ 1332(a)(1) because this suit is between citizens of different states and the matter in controversy

exceeds the sum or value of $75,000.

     **A.**     **The Parties Are Completely Diverse**

     7.      SAP is a Delaware Corporation whose principal place of business is in Newtown

Square, Pennsylvania.  SAP is therefore a citizen of Delaware and Pennsylvania for diversity

purposes.  <u>See</u> 28 U.S.C. § 1332(c)(1).

8.     Plaintiff's Complaint alleges that it is an Illinois corporation with its principal place of business in Woburn, Massachusetts.  *See* Complaint ¶ 1.  However, Genesis's corporate filings in both Illinois and Massachusetts state that it is a limited liability company ("LLC") with a principal place of business is located in East Moline, Illinois. *See* Massachusetts Business Entity Summary, attached hereto as **Exhibit B**; Illinois LLC File Detail Report, attached hereto as **Exhibit C**.  Further, Genesis, through its counsel, has acknowledged that it is a single-member LLC and that its sole member is an individual who is not a citizen of either Delaware or Pennsylvania.  As such, for diversity purposes, Plaintiff is not a citizen of either Pennsylvania or Delaware.

9.     Shelton is an individual who resides in Commonwealth of Pennsylvania.  Shelton is therefore a citizen of Pennsylvania for diversity purposes.

10.     There is complete diversity between the parties to this action because Defendants are citizens of Pennsylvania and SAP also is a citizen of Delaware, and Plaintiff is not a citizen of either Pennsylvania or Delaware.  *See* 28 U.S.C. § 1332(a)(1).

**B.     The Matter in Controversy Exceeds the sum or value of $75,000**

11.     The Complaint seeks damages and restitution in excess of $10 million.  *See* Complaint ¶¶ 22, 52.  The plaintiff's civil action cover sheet also states that Genesis incurred in excess of $10 million in damages.  *See* Civil Action Cover Sheet; *Williams v. Litton Loan Servicing*, No. CA 10-11866-MLW, 2011 WL 3585528, at *6 (D. Mass. Aug. 15, 2011) (citing *Salvail v. Relocation Advisors, Inc.*, C.A. No. 11–10500–RGS, 2011 WL 1883861, at *1 n. 1 (D. Mass. May 17, 2011) ("civil action cover sheets may be considered in determining the amount in controversy [under Section 1332]").

**III.     The Procedural Prerequisites For Removal Have Been Satisfied**

12.     Pursuant to 28 U.S.C. § 1446(b), this Notice is filed within thirty (30) days of receipt of the initial pleading setting forth the claim for relief upon which this action is based.

13.     Pursuant to 28 U.S.C. § 1441(a), venue is proper in the United States District Court for the District of Massachusetts, as the Complaint in this action was filed in the Superior Court for the Commonwealth of Massachusetts, Suffolk County.

14.     Defendants are filing a copy of this Notice with the Superior Court for the Commonwealth of Massachusetts, Suffolk County, and serving it upon counsel for Genesis, as required by 28 U.S.C. § 1446(d).

15.     This action is one which may be removed to this Court by SAP and Shelton pursuant to 28 U.S.C. § 1441.

16.     In removing this action, SAP and Shelton do not intend to waive any rights or defenses to which either is otherwise entitled under the Federal Rules of Civil Procedure or any other law or rule of court.

Dated:  June 26, 2015                         Respectfully submitted,

                                              SAP AMERICA, INC. AND
                                              BERNIS SHELTON
                                              By their attorneys,


                                              */s/ Steven M. Cowley*
                                              Steven M. Cowley (BBO # 554534)
                                              DUANE MORRIS LLP
                                              100 High Street
                                              Suite 2400
                                              Boston, MA 02110
                                              Tel.: (857) 488-4200
                                              Fax: (857) 488-4201
                                              smcowley@duanemorris.com

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically on June 26, 2015 to the registered participants as identified on the Notice of Electronic Filing (NEF) as well as by mail on plaintiff's counsel.

/s/ Steven M. Cowley
Steven M. Cowley

DM2\5741833.3

EXHIBIT A

| CIVIL ACTION COVER SHEET | DOCKET NO(S) B.L.S. 15-1734 | Trial Court Of Massachusetts Superior Court Department County: SUFFOLK |
|---|---|---|

PLAINTIFF(S)
Genesis Corporate Solutions, LLC d/b/a
YASH Technologies

DEFENDANT(S)
SAP America, Inc. and Bernis Shelton

ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE Board of Bar Overseers number
Gregory J. Aceto (BBO#558556) Ph:(617)728-0888
Aceto, Bonner & Prager, P.C.
One Liberty Square, Suite 410,Boston MA 02109

ATTORNEY (if known)

**RECEIVED**

**JUN 1 0 2015**

SUPERIOR COURT-CIVIL
MICHAEL JOSEPH DONOVAN
CLERK/MAGISTRATE

Origin Code Original Complaint

TYPE OF ACTION AND TRACK DESIGNATION (See reverse side) CODE NO. TYPE OF ACTION (specify) TRACK IS THIS A JURY CASE? *
_____ (B) (X Yes ( ) No
BE.1 claims involving breaches of contract or fiduciary duty, fraud misrepresentation business torts or other violations involving business relationships.

The following is a full and detailed statement of the facts on which plaintiff relies to determine eligibility in to The Business Litigation Session.

The Plaintiff has brought claims against Defendant SAP America, Inc. ("SAP") and SAP sales executive Bernis Shelton ("Shelton") for breach of contract, breach of implied covenant of good faith and fair dealing, breach of fiduciary duty, violations of G.L. Ch. 93A, tortious interference with advantageous business relations, promissory estoppel/ detrimental reliance, and quantum meruit/unjust enrichment arising from SAP and Shelton's interference with the Plaintiff's relationship with the Clemens Family Corporation ("Clemens" and/or the "Clemens Account"). Specifically, SAP and Shelton interfered with and improperly reallocated the Clemens Account to another SAP partner -- in disregard of SAP's known contractual arrangements with the Plaintiff and through the use of improper means-- in order to deprive the Plaintiff of approximately $2.7 Million Dollars in sales fees, licensing fees, and commissions, which SAP and Shelton secured for their own pecuniary gain. The Plaintiff's damages resulting from SAP and Shelton's interference with the Clemens Account are expected to total in excess of $10 Million Dollars over the life of the inchoate agreement.

* A Special Tracking Order shall be created by the Presiding Justice of the Business Litigation Session at the Rule 16 Conference.

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT.

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods." Signature of Attorney of Record_____
DATE: 6/10/15

## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                    SUPERIOR COURT DEPT.
                                                BUSINESS LITIGATION SESSION

_____
                                           )
GENESIS CORPORATE SOLUTIONS, LLC           )
d/b/a YASH TECHNOLOGIES,                    )
                                           )
            Plaintiff,                     )
                                           )
v.                                         )        Civil Action No.
                                           )                           15     1724
SAP AMERICA, INC. and                      )
BERNIS SHELTON,                            )        RECEIVED
                                           )
            Defendants.                    )        JUN 1 0 2015
_____)

SUPERIOR COURT-CIVIL
MICHAEL JOSEPH DONOVAN
CLERK/MAGISTRATE

## COMPLAINT AND DEMAND FOR JURY TRIAL

### INTRODUCTORY STATEMENT

This action is brought against the Defendants SAP America, Inc. ("SAP") and Bernis

Shelton ("Shelton"), arising out of SAP and Shelton's interference and unfair and deceptive

actions regarding the relationship of the Plaintiff Genesis Corporate Solutions, LLC d/b/a YASH

Technologies ("YASH" or the "Plaintiff") with the Clemens Family Corporation ("Clemens" or

the "Clemens Account"). Specifically, and as set forth in more detail below, SAP and Shelton

interfered with and improperly reallocated the Clemens Account to another SAP partner -- in

disregard of SAP's known contractual arrangements with YASH -- in order to deprive YASH of

over $10,000,000.00 in partial sales fees, licensing fees, and commissions over the life of the

inchoate agreement, which SAP and Shelton secured for their own pecuniary gain.

Accordingly, YASH has brought claims against the Defendants for breach of contract,

breach of the implied covenant of good faith and fair dealing, violations of Mass. Gen. Laws Ch.

93A, § 11, breach of fiduciary duty, and tortious interference with advantageous business relations. YASH also seeks recovery, on an alternative basis, under the equitable doctrines of promissory estoppel/detrimental reliance and quantum meruit/unjust enrichment.

## PARTIES

1.      The Plaintiff Genesis Corporate Solutions, LLC d/b/a YASH Technologies, is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business located at 150 Presidential Way, Suite 230, Woburn, Middlesex County, Massachusetts.

2.      The Defendant SAP America, Inc. is a corporation organized and existing under the laws of the State of Delaware and maintaining a usual place of business at 8 North Market Street, Boston, Suffolk County, Massachusetts.

3.      The Defendant Bernis Shelton is an individual who resides in the Commonwealth of Pennsylvania.

## FACTUAL BACKGROUND

4.      The Plaintiff YASH is a global technology services and outsourcing provider of production, administration, distribution, shipment and warehouse management solutions.

5.      At all times relevant hereto, YASH was and is an SAP Partner pursuant to an SAP Partner Edge Channel Reseller Policy agreement (the "Partner Agreement") between YASH and SAP. A true and correct copy of the Partner Agreement is attached hereto as *Exhibit 1*.

6.      In 2013 and 2014, YASH developed a valuable business relationship with Clemens, one of America's oldest family-owned marketers of value-added pork products.

7.      YASH worked closely with Clemens to develop and implement a phased-approach implementation project schedule whereby YASH would assist and enable Clemens to

transition from its existing business systems to the SAP enterprise resource planning ("ERP") solution over a five (5) year period.

8.      Under YASH'S involvement, Clemens entered into a License Software Pricing Agreement and an SAP Support Agreement on September 30, 2014. Additionally, YASH registered Clemens as a Channel Partner-owned opportunity under opportunity numbers 301884824 and 301738138, in regard to multiple SAP products, including the Extended Warehouse Management ("EWM") solutions.

9.      On information and belief, while YASH was negotiating the continued implementation of SAP-partnered solutions with Clemens as part of its five (5) year plan, representatives of SAP were wrongfully in direct communication with Clemens' representatives regarding a long-term plan for SAP products, under the guise of soliciting bids for EWM solutions, in breach of the terms of the Partner Agreement. YASH was one of the bidders for EWM solutions. On information and belief, YASH was unsuccessful in its EWM bid due to YASH's damaged relationship with Clemens resulting from SAP and Shelton's interference.

10.     SAP failed to inform YASH that its sales executives were actively working with and offering Clemens an enormous discount on not only the EWM module but also on the overall ERP Package which was part of the 5 years plan, without an agreement reached with YASH on a breakdown of commissions.

11.     SAP interfered with YASH's registered Channel Partner-owned opportunity and reallocated this significant business opportunity to itself and another SAP partner, Itelligence, Inc. ("Itelligence") in order to divert to SAP the significant commissions and fees YASH was entitled to under the terms of the Partner Agreement.

3

12.     Moreover, SAP sales executive Defendant Bernis Shelton, through the use of improper means, directly interfered to undercut YASH's relationship with Clemens, in violation of the Partner Agreement.

13.     Upon information and belief, Shelton surreptitiously orchestrated the termination of Clemens' September 2014 SAP Support Agreement with YASH by way of email correspondence, which contained misrepresentations and knowingly false statements, directed to and received at YASH's Massachusetts offices, upon which YASH relied to its detriment and which Shelton knew were untrue.

14.     SAP and Shelton made these misrepresentations of fact in order to secure a financial benefit for themselves in knowing violation of SAP's contractual obligations to YASH.

15.     SAP and Shelton directly interfered with YASH's registered Channel Partner-owned opportunity with Clemens so that SAP could retain an additional fifty-five (55%) percent of fees and commissions rightfully due and owing to YASH and to avoid paying YASH a $1.5 million dollar commission on the proposed license purchase agreement.

16.     SAP reallocated the Clemens Account to Itelligence, in a bad-faith effort to secure an additional $1,000,000 spread in revenue and fees for itself, by arranging to pay Itelligence a reduced commission amount.

17.     In bad faith, SAP severely undercut YASH's price-point by offering Clemens a seventy-six (76%) percent discount -- exceeding SAP's total margin of thirty-five (35%) percent -- in order to induce Clemens to enter into an agreement with SAP directly, to the exclusion of YASH. Based on information and belief, SAP wrote the contracts for not only the EWM product but also for the overall ERP Package (at a drastically reduced commission rate) effectively eliminating YASH's ability to compete for the contracts. In order to conceal SAP's direct

4

involvement in this process, SAP arranged to submit the contracts through Itelligence employees and paperwork.

18.  SAP and Shelton's actions and misconduct were intended to usurp YASH's registered Channel Partner-owned opportunities in breach of the Partner Agreement.

19.  As a result of SAP and Shelton's actions and misconduct, YASH has been deprived of fees and commissions for which SAP and Shelton are liable.

20.  YASH has made numerous inquiries and requests of SAP to investigate and rectify its misconduct and that of Shelton and SAP's sales executives.

21.  SAP has failed to sufficiently investigate or take any meaningful actions regarding YASH's complaints or to rectify YASH's grievances.

22.  To date, YASH has incurred damages in excess of $2,700,000.00 Dollars and continues to suffer damages totaling approximately $10,000,000.00 over the life of the inchoate agreement.

### CLAIMS FOR RELIEF

### COUNT I
### BREACH OF CONTRACT
### (YASH v. SAP)

23.  The Plaintiff repeats and incorporates by reference the allegations contained within the foregoing paragraphs as though fully set forth herein.

24.  At all times relevant hereto, SAP and YASH were partners regarding the marketing and sale of SAP software and business solutions, subject to the terms and conditions of the Partnership Agreement.

25.  SAP materially breached the Partner Agreement by, *inter alia*, directly interfering with the Clemens deal and improperly allocating the Clemens Account, a YASH

5

registered and Channel Partner-owned opportunity, to itself and another SAP partner to the detriment of YASH.

26. SAP also breached the Partner Agreement by attempting to conceal its actions and communications with Clemens; attempting to exclude YASH from sales meetings with Clemens; surreptitiously orchestrating the termination of Clemens' September 2014 SAP Support Agreement with YASH by way of email correspondence directed to and received at YASH's Massachusetts offices, which email contained misrepresentations and false statements which SAP knew to be untrue; and, significantly undercutting YASH's pricing in order to secure sales to the Clemens Account for itself.

27. SAP materially breached the Partner Agreement by ignoring YASH's repeated requests to investigate and rectify the actions of its sales executives regarding the Clemens Account.

28. YASH has fully and substantially complied with its obligations under the Partner Agreement.

29. To date, SAP has failed and refused to remedy its material breaches of the Partner Agreement.

30. As a direct and proximate result of SAP's material breaches of the Partner Agreement, YASH has suffered damages for which SAP is liable.

**WHEREFORE,** the Plaintiff demands judgment against SAP in accordance with Count I for Breach of Contract and an award of damages in an amount to be proven at trial, plus interest and court costs.

6

## COUNT II
## BREACH OF THE IMPLIED COVENANT OF
## GOOD FAITH AND FAIR DEALING
## (YASH v. SAP)

31.     The Plaintiff repeats and incorporates by reference the allegations contained within the foregoing paragraphs as though fully set forth herein.

32.     The Partner Agreement contained an implied covenant of good faith and fair dealing by which SAP was bound.

33.     By way of its actions and conduct set forth in detail herein, SAP has breached the covenant of good faith and fair dealing that is implied in the Partner Agreement.

34.     As a direct and proximate result of SAP's breach of the implied covenant of good faith and fair dealing, YASH has suffered damages for which SAP is liable.

**WHEREFORE,** the Plaintiff demands judgment against SAP in accordance with Count II for Breach of the Covenant of Good Faith and Fair Dealing and an award of damages in an amount to be proven at trial, plus interest and court costs.

## COUNT III
## VIOLATION OF MASS. GEN. LAWS CH. 93A, § 11
## (YASH v. SAP and SHELTON)

35.     The Plaintiff repeats and incorporates by reference the allegations contained within the foregoing paragraphs as though fully set forth herein.

36.     At all times relevant herein and material hereto, the Plaintiffs and Defendants were engaged in trade or commerce as defined by Chapter 93A.

37.     The Defendants' conduct as described herein occurred primarily and substantially in the Commonwealth of Massachusetts.

38.     The Defendants have violated Mass. Gen. Laws Ch. 93A, § 11 by, *inter alia*, conduct in disregard of known contractual arrangements with YASH intended to secure benefits

7

for SAP and Shelton, as set forth herein.

39.     The contractual agreement which SAP breached was transmitted and negotiated by SAP and entered into by YASH in the Commonwealth of Massachusetts.

40.     The Defendants' unfair and deceptive conduct includes surreptitiously orchestrating the termination of Clemens' September 2014 SAP Support Agreement with YASH by way of email correspondence directed to and received at YASH's Massachusetts offices, which email contained misrepresentations and false statements, which, on information and belief, SAP and Shelton knew to be untrue.

41.     By virtue of the Defendants' conduct as set forth herein, the Defendants have engaged in unfair and deceptive acts and practices in violation of Mass. Gen. Laws Chapter 93A.

42.     As a direct and proximate result of the Defendants' violations of Mass. Gen. Laws Chapter 93A, the Plaintiff has suffered damages for which the Defendants are liable.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants in accordance with Count III for violations of Mass. Gen. Laws Ch. 93A, and an award of damages in an amount to be proven at trial, doubled or trebled, plus attorneys' fees, interest and court costs.

### COUNT IV
### QUANTUM MERUIT/UNJUST ENRICHMENT
### (YASH v. SAP and SHELTON)

43.     The Plaintiff repeats and incorporates by reference the allegations contained within the foregoing paragraphs as though fully set forth herein.

44.     YASH conferred a measurable benefit upon the Defendants regarding the Clemens account for which YASH expected to be compensated.

45.     YASH's expectation of compensation from the Clemens Account was reasonable.

8

46.     SAP reasonably expected to compensate YASH and a reasonable person in SAP's position would have expected to compensate YASH for the benefits and services YASH provided regarding the Clemens Account.

47.     SAP has benefitted in excess of $2,700,000 in fees and commissions and revenues regarding sales of SAP products and software solutions to Clemens, without providing YASH with any compensation for the services and benefits provided.

48.     YASH is entitled to the fair and reasonable value of the services and benefits it provided.

49.     SAP and Shelton possessed appreciation and knowledge of the benefit conferred by YASH upon SAP and Shelton pertaining to the Clemens Account.

50.     SAP and Shelton have been unjustly enriched by retaining benefits rightfully due and owing to YASH.

51.     SAP and Shelton's retention of benefits under the circumstances is unjust and inequitable.

52.     Accordingly, YASH is entitled to restitution in excess of $10,000,000.00 or some portion thereof, under the equitable doctrines of quantum meruit/unjust enrichment.

**WHEREFORE,** the Plaintiff demands judgment against the Defendants in accordance with Count IV for Quantum Meruit/Unjust Enrichment and an award of damages in an amount to be determined at trial, plus interest and court costs.

**COUNT V**
**PROMISSORY ESTOPPEL/DETRIMENTAL RELIANCE**
**(YASH v. SAP and SHELTON)**

53.     The Plaintiff repeats and incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein.

9

54.     The Plaintiff reasonably relied on SAP's and Shelton's assurances, including assurances of payment, which reliance was to the Plaintiff's ultimate detriment.

55.     Accordingly, SAP and Shelton are estopped from denying that they owe the Plaintiff the amounts claimed herein and any other resultant damages.

**WHEREFORE,** the Plaintiff demands judgment against the Defendants in accordance with Count V for Promissory Estoppel/Detrimental Reliance and an award of damages in an amount to be determined at trial, plus interest and court costs.

**COUNT VI**
**BREACH OF FIDUCIARY DUTY**
**(YASH v. SAP)**

56.     The Plaintiff repeats and incorporates by reference the allegations contained in the foregoing paragraphs as though set forth fully herein.

57.     At all times relevant hereto, SAP owed to YASH a fiduciary duty of the utmost good faith and loyalty as YASH's partner.

58.     SAP breached its fiduciary duty to YASH by its conduct as set forth in detail herein, including, but not limited to acting in bad faith regarding the Clemens Account and SAP's sales thereto.

59.     SAP acted in derogation of its fiduciary duty to YASH for its own financial gain to the detriment of YASH.

60.     SAP should be disgorged of any and all profits received in derogation of its fiduciary duty to YASH.

61.     As a direct and proximate result of SAP's breach of its fiduciary duty to YASH, YASH has suffered damages for which SAP is liable.

**WHEREFORE**, the Plaintiff demands judgment against SAP in accordance with Count VI for Breach of Fiduciary Duty and an award of damages in an amount to be proven at trial, plus interest and court costs.

**COUNT VII**
**TORTIOUS INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONS**
**(YASH v. SHELTON)**

62.     The Plaintiff repeats and incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein.

63.     Shelton knew of the existence of the Partner Agreement between YASH and SAP and of the agreements and advantageous business relations between YASH and Clemens.

64.     Shelton intentionally induced Clemens to terminate its agreements with YASH and intentionally interfered with YASH's advantageous business relations with Clemens, through the use of false statements, mischaracterizations of fact and misrepresentations.

65.     Shelton intentionally interfered with YASH's advantageous business relations with Clemens by use of improper means and motive.

66.     As a direct and proximate result of Shelton's interference, YASH has suffered substantial damages, including a loss of its advantageous business relations with Clemens and specific economic damages.

**WHEREFORE**, the Plaintiff demands judgment against Shelton in accordance with Count VII for Tortious Interference with Advantageous Business Relations and an award of damages in an amount to be proven at trial, plus interest and court costs.

## PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiff Genesis Corporate Solutions, LLC d/b/a YASH

Technologies respectfully requests that this Honorable Court enter judgment in its favor and

against the Defendants, including but not limited to:

a. An entry of judgment in favor of the Plaintiff and against the Defendants on Counts I-VII;

b. Treble damages caused by the Defendants' willful violations of Mass. Gen. Laws, Ch. 93A;

c. An award of the Plaintiff's attorney's fees and costs incurred in connection with this action pursuant to Mass. Gen. Laws, Ch. 93A; and

d. Any further relief that this Honorable Court deems just or appropriate.

## REQUEST FOR JURY TRIAL

The Plaintiff requests a trial by jury on all claims contained in this Complaint which are

so triable by a jury.

Respectfully submitted,
**GENESIS CORPORATE SOLUTIONS, LLC
d/b/a YASH TECHNOLOGIES,**
By its attorneys

Gregory J. Aceto (BBO No. 558556)
aceto@abplawyers.com
Michael B. Cole (BBO No. 679596)
mcole@abplawyers.com
**ACETO, BONNER & PRAGER, P.C.**
One Liberty Square, Suite 410
Boston, MA 02109
(617) 728-0888

Dated: June 10, 2015.

12

# EXHIBIT 1



SAP PartnerEdge

# Channel Reseller Operations Policy
September 2011- V6



SAP values its family of Partners and understands the critical role they play in the success of our mutual customers and shared business.

The Channel Reseller Operations Policy governs the interaction between SAP and its Channel Reseller Partners in markets where both SAP direct sales and Channel Reseller Partner organizations sell to customers of SAP Products. It outlines how SAP and Channel Reseller Partners conduct business, and provides guidance on how any potential issues may be resolved.

Note: for the remainder of this document, all references to "Partner" refer to SAP Channel Reseller Partners, unless noted otherwise

**Guiding Principles**

- SAP markets its products and services via a multi-channel (direct and indirect) go-to-market strategy, where SAP and Partners work to best meet customer requirements relating to their business application software needs.

- SAP Partners are invited to sell SAP solutions in all market segments*

- The multi-channel go to market strategy offers Partners and customers benefits by offering greater resources and expertise for the selling, implementation and support of SAP solutions. SAP has dedicated personnel who are assigned to manage the relationships with authorized SAP Partners and to assist in accessing enablement resources and business development opportunities. SAP also assigns sales resources to support Partners in successfully selling SAP solutions.

- SAP recognizes that Partners are independent companies that work with customers and prospects to provide solutions. As independent companies, they carry out their business transactions autonomously.

- In all Partner-led sales activities, the Primary contact with the customer is the Partner. SAP still plays an active role, giving support when requested by the Partner, and only when requested by the Partner.

- SAP is committed to ensuring that Partners are granted equal opportunity to meet customer requests at all times.

- SAP commits to fully respect the confidentiality of a Partner's sales and intellectual property data. This information will not be shared with any other SAP Partner or third party and will only be shared within SAP on a "need to know" basis.

* Some countries may have „target market" restrictions for specific combinations of solution and market segment. Local contracts will specify these restrictions, if any.



**SAP's Territory and Account Coverage**

- SAP segments the market into territories in order to maximize the sales coverage provided by SAP and Partner resources.
- An SAP territory is a grouping of accounts that forms the area of coverage responsibility for SAP territory owners (either an Account Executive, Inside Sales Executive, Channel Sales Manager or Channel Sales Executive).
- SAP Territory planning is the responsibility of SAP's Territory owner for a given territory
- In each SAP territory there is a defined list of named accounts which represents current and potential customers that the SAP sales organization actively manages and pursues. These lists are not published, however at the request of a Partner, SAP may disclose to a Partner if a particular account is on the SAP named account list.
- It may be the case in SAP named accounts that SAP will pursue selling of all SAP solutions. Alternatively, there may be SAP named accounts where, due to a customer's choice, a Partner's special expertise or a Partner's market presence, the best coverage is provided exclusively by Partners or by Partners in combination with SAP direct sales. In such accounts, the Partner should work in alignment with their assigned SAP Partner manager and the SAP account executive for that account. It is the sole decision of the Partner whether to engage with this account.
- For all prospects and clients that are not part of the identified named accounts, SAP Partners are encouraged to take a lead role in engaging all opportunities. The Partner may engage with SAP for support as required.

**Partner Recommended Area of Activity**

To best meet customer needs and to help Partners succeed with the marketing of SAP products and services to potential customers, SAP recommends an "area of activity" to each Partner (combining vertical, geography and solution portfolio). This area of activity is determined by criteria including:

- The number of available qualified/certified resources within the Partner area of activity
- The number of a Partner's own solutions and know-how within a defined vertical market
- The number of reference customers provided
- Size of the installed base within the Partner's area of activity
- Skills to deliver Maintenance and Support services to end customers based on SAP Support Certification program.

A Channel Partner's area of activity is non-exclusive and non-binding. A Partner's Area of Activity may cover one or many Territories as described in the previous section.

**Lead Distribution**

SAP will work with Partners on joint lead generation activities, complemented by the Partner's own initiated activities. It is expected that a significant portion of demand for SAP solutions will come from SAP Partners utilizing their existing customer relationships and expertise within local markets.



CHANNEL RESELLER OPERATIONS POLICY FOR SAP EMPLOYEES AND SAP CHANNEL PARTNERS

### SAP Generated Leads

The distribution of leads, including those obtained through 3rd parties (e.g. referral program) is determined according to the following scenarios:

- Leads for SAP named accounts will be distributed to SAP sales. SAP sales may decide to transfer the lead to a Partner and when doing so, SAP will follow the rules defined in this section.
- Leads for SAP non-named accounts will be distributed to a Partner according to the recommended Partner area of activity as defined locally.

If there is only one Partner qualified within the Partner area of activity, the lead will be assigned to that Partner. If there is more than one Partner qualified, the lead will be distributed to the Partner who scores the highest based on the following criteria:

- number of the Partner's own solutions and know-how within a defined vertical market
- skills to deliver Maintenance and Support services to end customers based on the SAP Support Certification program
- number of available qualified /certified resources within the Partner area of activity
- number of reference customers provided
- proven expertise and level within the SAP PartnerEdge program
- closing rate
- accuracy of maintaining deal information in CRM (working together with SAP Opportunity contacts)
- receivables balance

If the Partner selected using the criteria above does not have the capacity to accept the lead, the lead will be distributed to the channel Partner who scores the next highest based on the criteria above.

Where there is no appropriate authorized Partner to pursue an opportunity (e.g. no Partner is available in the region, no Partner with specific expertise available), the SAP opportunity contact, after consultation and agreement with the SAP Executive in charge, will pursue the opportunity in order to meet the customer's requirement.

### Lead Reassignment

SAP will reassign leads if the Partner does not a) accept or reject a lead within 3 business days and/or b) take action on the lead within one week and/or c) provide feedback on lead status within two weeks and/or d) act on the lead in any 90 day period.

SAP will consult with the Partner to agree upon reassignment of a lead.

A request for a unilateral reassignment may be made via a request following the exception-handling process.

## Partner Generated Leads

The Partner is encouraged to inform their SAP Channel Sales Manager of the leads they are working on, in order to ensure that they are tracked consistently and supported if and when required.  Should a Partner choose not to work on a lead, it can be passed to SAP via SAP's



referral program. The SAP Referral program requires enrollment and is not available in all areas. Where the Referral program is available, local terms, conditions and benefits apply.

### *Deal Registration*

Partners will have access to the Partner pipeline/deal registration tool [where available] via the SAP Channel Partner Portal (channel.sap.com) and will have the responsibility to accurately input, update & maintain the status of opportunities being pursued. The Partner will only have access to the data which is entered into the system by their organization and in no case will data of other Partners be visible.

On any successfully registered Partner deal, SAP will not reallocate such deals to any other Partner or to SAP sales. Non-public Partner data (including that related to deal registration) will only be shared internally within SAP on a need-to know basis.

SAP, through the SAP opportunity contact, will follow-up on the opportunities with the Partner to ensure that there is a smooth progression through the customer engagement lifecycle, and update the opportunity status as defined by the SAP forecasting policy.

Without a Partner's consent, SAP teams will not approach a channel Partner's customers to interfere with the selling process or to influence the customer to purchase software directly from SAP. The Partner can request assistance from SAP if needed, but this is the choice of the Partner.

### No Interference by SAP with Partners' Pricing

Customer pricing is determined by the Partner. SAP will provide a non-binding price recommendation, but the Partner is free to apply this price or not. SAP will not inform a customer or prospect of the Partner's cost.

In no cases will SAP attempt to negotiate a Partner's pricing discount (the Partner's buy price) below what the Partner is contractually entitled to in their reselling contract.

### Select Scenarios for Sales into Large, Multi-jurisdiction accounts

Some Large Companies may wish to buy SAP Solutions centrally (direct from SAP) for deployment & support across their subsidiaries spread in multiple countries. Should SAP be made aware by the customer that any one or more of these subsidiaries are existing customers of a Partner, it is up to the customer to discuss and decide with the Partner if they wish to continue to maintain those deployments through the Partner. SAP will make all attempts to support the interest of the Partner in such cases & by discussing these on a case by case basis with the customer.

### Exceptions to Channel Operations Policy: Market Acceptance of Channel Readiness of New Product or Service Offerings

When SAP introduces new products or service offerings; SAP may lead the go-to-market to validate the solution and ensure that its offerings meets market acceptance and/or channel readiness requirements. In this way, SAP is able to reduce the risk and investment to its Partners.

In order to build, validate and test market acceptance and/or a viable Partner model, SAP may release the new product or service offering for re-sale in a controlled manner to Partners engaged in an Early Partner Program only.

Once fully market accepted and channel ready, SAP may incorporate the product or service offering on its reseller pricelist, and allow for full scale roll-out to Partners on a country-by-country basis.



When a new product or service offering is determined to be fully channel ready and available, the rules outlined in this policy apply.

### Role of SAP Global Services in the Indirect Space

Unless upon the request of a Partner, or as described below, the role of SAP Global Services in Partner accounts and prospects should primarily be to provide Partner support, enablement and skills transfer.

#### *Early Lifecycle Solutions*

SAP Global Services should be the preferred prime implementation Partner for "early lifecycle solutions" and strategic products in the following cases:

- new software products or releases
- new SAP packaged solutions releases
- new SAP best practices releases
- new releases of software components underlying best practices within a given country context.

The focus of SAP Global Services in such cases should be on opening up this market for through creation of lighthouse references and through supporting Partners.

Other roles of SAP Global Services are to support Partner implementations with services such as Expert Services (pre-defined consulting services embedded in Partner projects), Safeguarding / Quality Reviews, and enablement through SAP Education.

### Issue Resolution Process

There may at times, be sales related situations that arise, such as a conflict or dispute that could require investigation, clarification and/or mediation in order to appropriately resolve. Where possible these sales related disputes should be resolved in the country where the Partner has its office, using the following escalation path:

1. SAP Ecosystem and Channels Head (Country) and SAP Country Managing Director
2. SAP Regional Ecosystem and Channels head and SAP Regional President
3. SAP President of Global Ecosystem & Channels and SAP President of Global Sales

Escalation to the Regional level will be required in cases containing cross-border business. The country contacts do not have the authority to resolve cross-border escalations.

Once consensus is achieved, there is no need to escalate the issue to the next level.

Decisions must be based on the Channel Reseller Operations Policy and common business sense. Every decision must be made in compliance to all governing legislation.

*SAP values its family of Channel Reseller Partners and understands the critical role they play in the success of our mutual customers and shared business. The entire SAP team thanks you for your Partnership.*

### For more Information

Please contact your SAP Channel Sales Manager or visit SAP Channel Partner Portal at http://channel.sap.com

6



CHANNEL RESELLER OPERATIONS POLICY FOR SAP EMPLOYEES AND SAP CHANNEL PARTNERS



**channel.sap.com**

© 2011 SAP AG. All rights reserved.

SAP, R/3, SAP NetWeaver, Duet, PartnerEdge, ByDesign,
SAP BusinessObjects Explorer, StreamWork, and other SAP products
and services mentioned herein as well as their respective logos are
trademarks or registered trademarks of SAP AG in Germany and
other countries.

Business Objects and the Business Objects logo, BusinessObjects,
Crystal Reports, Crystal Decisions, Web Intelligence, Xcelsius, and
other Business Objects products and services mentioned herein as
well as their respective logos are trademarks or registered trademarks
of Business Objects Software Ltd. Business Objects is an SAP
company.

Sybase and Adaptive Server, iAnywhere, Sybase 365, SQL
Anywhere, and other Sybase products and services mentioned herein
as well as their respective logos are trademarks or registered
trademarks of Sybase, Inc. Sybase is an SAP company.

All other product and service names mentioned are the trademarks
of their respective companies. Data contained in this document serves
informational purposes only. National product specifications may vary.

These materials are subject to change without notice. These materials
are provided by SAP AG and its affiliated companies ("SAP Group")
for informational purposes only, without representation or warranty of
any kind, and SAP Group shall not be liable for errors or omissions
with respect to the materials. The only warranties for SAP Group
products and services are those that are set forth in the express
warranty statements accompanying such products and services, if
any. Nothing herein should be construed as constituting an additional
warranty.



EXHIBIT B





William Francis Galvin
Secretary of the Commonwealth of Massachusetts

# Corporations Division

## Business Entity Summary

**ID Number: 200181763**                    Request certificate    New search

**Summary for:  GENESIS CORPORATE SOLUTIONS, LLC**

---

**The exact name of the Foreign Limited Liability Company (LLC):**   GENESIS CORPORATE SOLUTIONS, LLC

---

**The name was changed from:** YASH TECHNOLOGIES CORPORATE SOLUTIONS, LLC **on** 09-30-2009
**The name was changed from:** GENESIS CORPORATE SOLUTIONS, LLC **on** 09-28-2007

---

**Entity type:**   Foreign Limited Liability Company (LLC)

---

**Identification Number:** 200181763          **Old ID Number:** 000852910

---

**Date of Registration in Massachusetts:**          **Date of Revival:**   10-07-2009
10-28-2003

---

**Date of Dissolution:**   04-30-2009          **Last date certain:**

---

**Organized under the laws of: State:** IL **Country:** USA **on:** 08-27-2003

---

**The location of the Principal Office:**

Address:  605 17TH ST.

City or town, State, Zip code,       E. MOLINE,   IL   61244   USA
Country:

---

**The location of the Massachusetts office, if any:**

Address:  150 PRESIDENTIAL WAY SUITE 230

City or town, State, Zip code,       WOBURN,   MA   01801   USA
Country:

---

**The name and address of the Resident Agent:**

Name:    CORPORATION SERVICE COMPANY

Address:  84 STATE STREET

City or town, State, Zip code,       BOSTON,   MA   02109   USA
Country:

---

**The name and business address of each Manager:**

| Title | Individual name | Address |
| --- | --- | --- |
| MANAGER | JACINTO ARAUZ | 150 PRESIDENTIAL WAY, STE 230 WOBURN, MA 01801 USA |

---

**The name and business address of the person(s) authorized to execute, acknowledge, deliver, and record any recordable instrument purporting to affect an interest in real property:**

| Title | Individual name | Address |
|---|---|---|
| REAL PROPERTY | MANOJ K. BAHETI | 605 17TH ST. E. MOLINE, IL 61244 USA |

☐ **Consent**    ☐ **Confidential Data**    ☐ **Merger Allowed**    ☐ **Manufacturing**

**View filings for this business entity:**

```
ALL FILINGS
Annual Report
Annual Report - Professional
Application For Registration
Certificate of Amendment
Certificate of Cancellation
```

**View filings**

**Comments or notes associated with this business entity:**

**New search**

EXHIBIT C



**LLC FILE DETAIL REPORT**

| | | | |
|---|---|---|---|
| **Entity Name** | GENESIS CORPORATE SOLUTIONS, LLC | **File Number** | 00990841 |
| **Status** | ACTIVE | **On** | 07/10/2014 |
| **Entity Type** | LLC | **Type of LLC** | Domestic |
| **File Date** | 08/27/2003 | **Jurisdiction** | IL |
| **Agent Name** | JAMES S ZMUDA | **Agent Change Date** | 08/27/2003 |
| **Agent Street Address** | 506-15TH ST STE 600 | **Principal Office** | 605-17TH AVE EAST MOLINE, IL 61244 |
| **Agent City** | MOLINE | **Management Type** | MGR  View |
| **Agent Zip** | 61265 | **Duration** | 08/27/2053 |
| **Annual Report Filing Date** | 07/10/2014 | **For Year** | 2014 |
| **Assumed Name** | ACTIVE - YASH TECHNOLOGIES CORPORATE SOLUTIONS, LLC | | |
| **Old LLC Name** | 07/30/2008 - YASH TECHNOLOGIES CORPORATE SOLUTIONS, LLC 07/02/2007 - GENESIS CORPORATE SOLUTIONS, LLC | | |
| **Series Name** | NOT AUTHORIZED TO ESTABLISH SERIES | | |

Return to the Search Screen

Purchase Certificate of Good Standing

**(One Certificate per Transaction)**

BACK TO CYBERDRIVEILLINOIS.COM HOME PAGE

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Genesis Corporate Solutions, LLC d/b/a/ YASH Technologies

**DEFENDANTS**
SAP America, Inc. and Bernis Shelton

**(b)** County of Residence of First Listed Plaintiff  Rock Island Co., IL
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Gregory J. Aceto, Aceto, Bonner & Prager PC
One Liberty Square Ste. 410; Boston MA 02109
617-209-2998

Attorneys *(If Known)*
Steven M. Cowley, Duane Morris LLP
100 High Street, Suite 2400; Boston, MA 02110-1724
857-488-4261

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1 U.S. Government Plaintiff

☐ 3 Federal Question
*(U.S. Government Not a Party)*

☐ 2 U.S. Government Defendant

☒ 4 Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

### CONTRACT
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☒ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

### REAL PROPERTY
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
☐ 365 Personal Injury - Product Liability
☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

### CIVIL RIGHTS
☐ 440 Other Civil Rights
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 445 Amer. w/Disabilities - Employment
☐ 446 Amer. w/Disabilities - Other
☐ 448 Education

### PRISONER PETITIONS
**Habeas Corpus:**
☐ 463 Alien Detainee
☐ 510 Motions to Vacate Sentence
☐ 530 General
☐ 535 Death Penalty
**Other:**
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition
☐ 560 Civil Detainee - Conditions of Confinement

### FORFEITURE/PENALTY
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 690 Other

### LABOR
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Management Relations
☐ 740 Railway Labor Act
☐ 751 Family and Medical Leave Act
☐ 790 Other Labor Litigation
☐ 791 Employee Retirement Income Security Act

### IMMIGRATION
☐ 462 Naturalization Application
☐ 465 Other Immigration Actions

### BANKRUPTCY
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

### SOCIAL SECURITY
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
☐ 375 False Claims Act
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 850 Securities/Commodities/ Exchange
☐ 890 Other Statutory Actions
☐ 891 Agricultural Acts
☐ 893 Environmental Matters
☐ 895 Freedom of Information Act
☐ 896 Arbitration
☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1 Original Proceeding

☒ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from Another District *(specify)*

☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. 1332
Brief description of cause:
Removal of state court action asserting breach of contract, tortious interference, and related claims

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE                                DOCKET NUMBER

DATE
06/26/2015

SIGNATURE OF ATTORNEY OF RECORD
/s/ Steven M. Cowley

**FOR OFFICE USE ONLY**

RECEIPT #             AMOUNT             APPLYING IFP             JUDGE             MAG. JUDGE

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1. Title of case (name of first party on each side only)_____

_____

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.   (See local
   rule 40.1(a)(1)).

   ___     I.     410, 441, 470, 535, 830*, 891, 893, 895, R.23, REGARDLESS OF NATURE OF SUIT.

   ___     II.    110, 130, 140, 160, 190, 196, 230, 240, 290,320,362, 370, 371, 380, 430, 440, 442, 443, 445, 446, 448, 710, 720,
                  740, 790, 820*, 840*,  850, 870,  871.

   ___     III.   120, 150, 151, 152, 153, 195, 210, 220, 245, 310, 315,  330, 340, 345, 350, 355, 360, 365, 367, 368, 375, 385, 400,
                  422, 423, 450, 460, 462, 463, 465, 480, 490, 510, 530, 540, 550, 555,  625, 690, 751, 791, 861-865,  890, 896, 899,
                  950.

          *Also complete AO 120 or AO 121. for patent, trademark or copyright cases.

3. Title and number, if any, of related cases.  (See local rule 40.1(g)).  If more than one prior related case has been filed in this
   district please indicate the title and number of the first filed case in this court.

   _____

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

                                                            YES ☐          NO ☐

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See 28 USC
   §2403)

                                                            YES ☐          NO ☐

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

                                                            YES ☐          NO ☐

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

                                                            YES ☐          NO ☐

7. Do all of the parties  in this action, excluding governmental agencies of the United States and the Commonwealth of
   Massachusetts ("governmental agencies"),  residing in Massachusetts reside in the same division? -  (See Local Rule 40.1(d)).

                                                            YES ☐          NO ☐

        A.     If yes, in which division do all of the non-governmental parties reside?

               Eastern Division ☐          Central Division ☐          Western Division ☐

        B.     If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies,
               residing in Massachusetts reside?

               Eastern Division ☐          Central Division ☐          Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court?  (If yes,
   submit a separate sheet identifying the motions)

                                                            YES ☐          NO ☐

**(PLEASE TYPE OR PRINT)**
**ATTORNEY'S NAME** _____

**ADDRESS** _____

**TELEPHONE NO.** _____

                                                                    **(CategoryForm9-2014.wpd )**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GENESIS CORPORATE SOLUTIONS, LLC
d/b/a YASH TECHNOLOGIES,

.                    Plaintiff,

    v.                                              Civil Action No.:

SAP AMERICA, INC. and
BERNIS SHELTON,

                    Defendants.

## CORPORATE DISCLOSURE STATEMENT OF SAP AMERICA, INC.

Pursuant to Rule 7.3 of the Local Rules of the United States District Court for the District

of Massachusetts, Defendant SAP America, Inc. states as follows:

Defendant SAP America, Inc. is a subsidiary of parent SAP SE.  No other publicly traded

corporation owns 10% or more of SAP America, Inc.'s stock.

Dated:  June 26, 2015                    Respectfully submitted,

                                         SAP AMERICA, INC. AND
                                         BERNIS SHELTON
                                         By their attorneys,

                                         */s/ Steven M. Cowley*
                                         Steven M. Cowley (BBO # 554534)
                                         DUANE MORRIS LLP
                                         100 High Street
                                         Suite 2400
                                         Boston, MA 02110
                                         Tel.: (857) 488-4200
                                         Fax: (857) 488-4201
                                         smcowley@duanemorris.com

**CERTIFICATE OF SERVICE**

I hereby certify that this document, filed through the ECF system, will be sent

electronically on June 26, 2015 to the registered participants as identified on the Notice of

Electronic Filing (NEF) as well as by mail on plaintiff's counsel.

*/s/ Steven M. Cowley*
Steven M. Cowley

DM1\5769839.1